IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT DALE HEILMAN,                                      CV. 09-791-HU

        Petitioner,           FINDINGS AND RECOMMENDATION

  v.

RICK COURSEY,

        Respondent.


Kristina Hellman
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

John R. Kroger
Attorney General
Jacqueline Kamins
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

    Attorneys for Respondent

HUBEL, Magistrate Judge

1 -- FINDINGS AND RECOMMENDATION

Petitioner, an inmate at Two Rivers Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's amended habeas corpus petition should be denied and this proceeding dismissed, with prejudice.

## BACKGROUND

On December 1, 2000, petitioner was indicted on 30 counts arising from a crime spree that began when he threw a garbage can through the window of his ex-wife's house. Once inside the house, he assaulted his ex-wife and his fourteen year old daughter. Petitioner fled in his van. While driving on the freeway, petitioner rammed three vehicles (one which was driven by an off-duty police officer), and intentionally collided with a police car. Petitioner subsequently entered a convenience store and attempted to take a store clerk hostage. Police arrived at the store and arrested petitioner.

Petitioner waived his right to a jury trial, and presented a defense to the court of Guilty Except for Insanity (GEI). See O.R.S. 161.295(1).[1] Dr. Richard Kolbell, a psychologist, testified on behalf of petitioner. Dr. Kolbell opined that petitioner

---

[1] Pursuant to O.R.S. 161.295(1) a defendant is guilty except for insanity if, "as a result of mental disease or defect at the time of engaging in criminal conduct, [he] lack[ed] substantial capacity to either appreciate the criminality of the conduct or to conform [his] conduct to the requirements of law."

2 -- FINDINGS AND RECOMMENDATION

suffers from a multitude of disorders including intermittent explosive disorder, major depressive disorder, dysthymic disorder, polysubstance dependence (in remission), alcohol dependence (in remission), and borderline personality disorder. TR at 260 & 346-47. According to Dr. Kolbell, the combination of petitioner's psychological conditions and alcohol use rendered him unable to control his impulses on the night of his arrest. TR at 290-92.

Dr. Genevieve Arnaut, a psychologist testifying on behalf of the prosecution, disagreed. In her opinion, petitioner's behavior is attributable to his borderline personality disorder, which is not considered a mental disease or defect under Oregon law. TR at 303, 447-48 & 452-461. Dr. Arnaut opined that petitioner was able to understand the criminality of his actions and conform his conduct to the requirements of the law. TR at 467-72. Dr. Arnaut further opined that Dr. Kolbell's diagnosis of intermittent explosive disorder is inconsistent with, or fails to properly account for, his opinion that petitioner also suffers from a borderline personality disorder. TR 480-84, 511, 529-32, 538-40, 547-48, & 554.

The trial court rejected petitioner's GEI defense, convicting him of 21 of the 30 charges. See Resp. Exh. 130. After the court rendered its verdict, the State notified defense counsel for the first time that it would seek a Dangerous Offender Sentence. TR at

3 -- FINDINGS AND RECOMMENDATION

1043; see O.R.S. 161.725.[2] At the sentencing hearing, the State presented the testimony of Dr. Frank Colistro. Dr. Colistro opined that petitioner suffers from a borderline personality disorder, and that there is a high risk that petitioner would cause serious harm to others in the future. TR at 858-61. Dr. Kolbell also testified at sentencing, opining that if petitioner were left untreated, he would pose a "high-moderate to high" risk of future violent acts. TR at 924. However, Dr. Kolbell was of the opinion that petitioner could benefit from available treatment programs.

On November 2, 2001, the trial court sentenced petitioner. The court merged counts one and two and imposed an indeterminate Dangerous Offender Sentence of 20 years, and a determinate 90-month minimum sentence. TR at 1070-74, 1079-81; see O.R.S. 161.725 & 161.737. On the remaining counts, the trial court imposed consecutive determinate sentences totaling 192 months. The trial court structured petitioner's sentence to ensure that, if the Dangerous Offender Sentence were overturned on appeal (presumably based upon Apprendi), petitioner would serve 20-25 years imprisonment. TR at 1094.

---

[2] Under O.R.S. 161.725, a court may impose an indeterminate sentence of up to 30 years if the defendant is convicted of a Class A felony and found to be "suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another." The court also imposes a determinate, minimum sentence that the defendant must serve before becoming eligible for release to post-prison supervision. O.R.S. 161.737(2).

4 -- FINDINGS AND RECOMMENDATION

Petitioner filed a direct appeal assigning error to the trial court's denial of his motion for acquittal on count 4 (assault in the second degree), and challenging the constitutionality of his Dangerous Offender Sentence under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court issued a written decision affirming petitioner's conviction and sentence. <u>State v. Heilman</u>, 193 Or. App. 329, 92 P.3d 767 (2004), <u>aff'd</u>, 339 Or. 661, 125 P.3d 728 (2005). In rejecting petitioner's contention that the state must plead the elements of the dangerous-offender enhancement in an indictment, the Oregon Supreme Court opined that a GEI defense "is a matter for cautious legal advice":

> *In counseling a client on the advisability of seeking a finding of guilty except for insanity, and providing the facts to the trier of fact that might support such a determination, defense counsel would be wise to explain to the client the possibility that the state might seek to use admitted facts against the defendant.* As we noted above, *Apprendi* and *Blakely* do not foreclose the state's use of facts that the defendant chooses to admit at trial.

<u>Id.</u> at 672 (emphasis added).

Petitioner subsequently sought state post-conviction relief incorporating the Oregon Supreme Court's cautionary advice into a claim that trial counsel was constitutionally ineffective when he:

> "[f]ailed to give cautious legal advice, to wit; in counseling a client on the advisability of seeking a finding of guilty except for insanity, defense counsel [was] less than competent to have not explained to the client the possibility that the state might seek to use

5 -- FINDINGS AND RECOMMENDATION

   those facts against the client in a dangerous offender sentence under ORS 161.725(1)(a)."

Resp. Exh. 118 at 4.

  Petitioner's trial counsel, Joel Greenberg, provided an affidavit responding to petitioner's claim of ineffective assistance of counsel. Trial counsel explained that he did not predict that the State could seek a sentencing enhancement because petitioner's sentencing exposure already was so great given the number of counts and victims involved. Hence, trial counsel conceded that he may not have discussed the issue with petitioner:

> 5. Although it was a possibility, I did not expect that the state would seek a DO enhancement in this case because, absent our prevailing on a GEI theory, *it seemed virtually certain to me that Mr. Heilman would be convicted of many charges that would likely be added up to a severe sentence and that the state would not see a need to seek additional prison time*, particularly in light of the fact that, according to my log notes, the assigned DDA discussed plea bargains that ranged from 8.5 to 12 years.
>
> I have been unable to find any notes of discussions with Mr. Heilman about the advisability of going to trial rather than accepting a plea bargain. However, *my now indistinct memory is that he was consistently unreceptive to the idea of a plea that would involve significant prison time and that, absent an offer based on treatment rather than punishment and prison, he wanted a trial*. I am confident that I discussed the difficulty of winning a GEI verdict, even with good expert support. I do not believe that I ever assured Mr. Heilman that he would do better by going to trial than by accepting a plea bargain . . . . I also believe that I advised Mr. Heilman that although any sentence he might receive would ultimately be determined by a judge, that the DA would seek more prison than whatever was finally offered as a plea bargain if he lost at trial.

6 -- FINDINGS AND RECOMMENDATION

> I am unable to locate any detailed notes of settlement conferences with Judge Bergman that took place on June 6, 2001 other than a log note which indicates that . . . [DDA Heyworth] would draft an offer of 10-12 years. A subsequent log note of June 25, 2001 indicates that Ms. Heyworth thought she could support a plea bargain of 8.5 years *and a log note of a contact visit with Mr. Heilman that occurred on the following day indicates that he "rejects deal and wants trial."* I do not recall whether or not I discussed the possibility of a DO enhancement with Mr. Heilman, but *I am confident that we discussed the likelihood of conviction and a prison sentence that would be up to the trial judge within the limits of Measure 11.*
>
> * * * *
>
> 6. As stated above, I did not expect that the state could seek a DO sentence and it is certainly possible that I did not discuss that scenario with Mr. Heilman prior to trial. * * * *I believe that I did extensively discuss the difficulty of winning his case based on a GEI theory, but that he was unwilling to accept a plea bargain in the neighborhood of 8.5 to 10 years even if a conviction was likely to result in a significant longer time in prison.*

Resp. Exh. 123 at 3-4 (emphasis added).

Petitioner's recollection of the legal advice he received prior to trial differed from trial counsel's. Petitioner testified that Mr. Greenberg advised him to reject the 8.5 year plea offer because they could do better at trial. Petitioner testified that, if given the opportunity "today", he would accept a plea offer. Resp. Exh. 124 at 11-12.

Based on the foregoing, the post-conviction court concluded that trial counsel was ineffective in failing to inform petitioner that a GEI defense would require petitioner to admit facts that the

7 -- FINDINGS AND RECOMMENDATION

State could use against him in seeking a Dangerous Offender Sentence. Resp. Exh. 136 at 2-3. In so holding, however, the post-conviction court rejected as incredulous petitioner's testimony that trial counsel advised him *not* to take a 8.5 year plea offer because he could do better at trial:

> The Petitioner here was charged with multiple offenses arising out of a crime spree lasting at most a couple of hours. At least three settlement offers were made to the Petitioner by the DA, all of which Petitioner rejected. The last offer was for 8.5 years. *The Petitioner claims, and the court disbelieves, Petitioner's attorney told him that he thought he could get him a better result by going to trial*. Petitioner claims that his attorney told him that he would probably get a sentence more in the 70 month range. Given the number and nature of the offences [sic] here, such a claim is simply preposterous and the court simply does not believe such a statement was made by the attorney.

Resp. Exh. 136 at 1 (emphasis added).

Based upon this credibility determination, the post-conviction court concluded as a matter of fact that, had counsel advised petitioner of the risk of a dangerous offender enhancement, petitioner nevertheless would have proceeded to trial, albeit without a GEI defense:

> I agree with Ms. Gerber that Mr. Heilman was going to trial. It was only a question of what posture he would have gone.
>
> And it's my belief that [had] his lawyer [sat] him down and [said] "Here's your exposure if we try this GEI and fail or we go to trial without the GEI," I have no doubt in my mind that Mr. Heilman would have said "Forget the GEI, but we're still going to trial." I just firmly believe that.

8 -- FINDINGS AND RECOMMENDATION

> And I don't believe he'd have taken any plea bargain. I think just the facts don't support that, given the attitude that he showed.

Resp. Exh. 135 at 19.

Despite the post-conviction court's conclusion that petitioner failed to demonstrate a reasonable probability that he would have accepted a favorable plea deal, the post-conviction court opined that petitioner suffered prejudice measured by "the difference between the sentence that he got, which included the dangerous offender, and the sentence that the judge clearly intended him to have, if for some reason they screwed up the GEI and that got kicked out of the case." Id. Accordingly, the post-conviction court vacated the 20-year dangerous offender portion of the sentence, and imposed the 90-month determinate sentence on count one. Id. at 19-20; Resp. Exh. 137. Petitioner's sentence on the remaining counts was unchanged, for a total sentence of 282 months. See Exh. 101 at 4-13; Resp. Reply Brief at 2 n.1.

Petitioner appealed, assigning error to the post-conviction court's (1) denial of his claim that his attorney was ineffective for failing to give adequate advice about a GEI defense; and (2) rejection of his contention that his sentence violated Apprendi. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Heilman v. Blacketter, 225 Or. App. 376, 201 P.3d 940, rev. denied, 346 Or. 213 (2009).

9 -- FINDINGS AND RECOMMENDATION

In the instant proceeding, petitioner again alleges that trial counsel rendered constitutionally ineffective assistance when he failed to advise petitioner that pursuit of a GEI defense exposed him to the imposition of a Dangerous Offender Sentence under O.R.S. 161.725. Petitioner alleges that, had he known of that risk, he would not have gone to trial but instead would have accepted a favorable plea bargain. Respondent moves the court to deny habeas relief on the basis that petitioner fundamentally altered this ground for relief, rendering it procedurally defaulted. Additionally, respondent argues that claim fails on the merits.

## DISCUSSION

### I. Fair Presentation.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1); Smith v. Baldwin, 510 F.3d 1127, 1137-38 (9th Cir. 2007); Carter v. Giurbino, 385 F.3d 1194, 1196 (9th Cir. 2004). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Casey v. Moore, 386 F.3d 896, 916 (9th Cir. 2004).

Respondent argues that petitioner fundamentally altered his ineffective assistance of counsel claim because in state court

10 -- FINDINGS AND RECOMMENDATION

petitioner argued that he was prejudiced by being sentenced as a dangerous offender, and he now argues that the prejudice resulted from the imposition of the alternative 90-month determinate sentence. I disagree. Throughout all stages of the state post-conviction proceeding, petitioner argued that but for counsel's deficiencies, he would have accepted a plea offer rather than proceed to trial. Any change in the presentation of petitioner's argument to this court simply reflects the fact that the state post-conviction court granted partial relief in the form of vacating the Dangerous Offender Sentence. There has been no fundamental change in the claim. See Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999). Accordingly, I reject respondent's assertion that petitioner's ineffective assistance of counsel claim was not fairly presented.

## II.  Ineffective Assistance of Counsel.

A claim of ineffective assistance of counsel requires petitioner to prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bell v. Cone, 535 U.S. 685, 695 (2002); Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The Supreme Court has applied this two-part analysis to ineffective-assistance claims arising out of the plea

11 -- FINDINGS AND RECOMMENDATION

process. Hill v. Lockhart, 474 U.S. 52, 59 (1985). When the Strickland standard is combined with the standard of review under 28 U.S.C. § 2254(d), this court's review of a state court's application of Strickland is "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

Respondent does not challenge the propriety of the post-conviction court's conclusion that trial counsel was deficient in failing to advise petitioner that by pursuing a GEI defense, he risked establishing facts that would support a Dangerous Offender Sentence. Accordingly, I defer to that conclusion (28 U.S.C. § 2254(d)), and turn to the issue of prejudice.

In the context of a rejected plea offer, a petitioner satisfies the prejudice component of Strickland by demonstrating a reasonable probability that, if not for his attorney's mistake, he would have accepted the plea agreement rather than proceed to trial. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003); Hoffman v. Arave, 455 F.3d 926, 941-42 (9th Cir. 2006), vacated in part on other grds., 552 U.S. 117 (2008).

Petitioner argues that the record demonstrates a reasonable probability that he would have accepted a plea offer because (1) he had no factual defense to most of the charges and "[i]t is highly unlikely that a defendant would proceed to trial on a 30-count indictment with no factual defense"; (2) the disparity between the plea offer of 8.5 years and his ultimate sentence (with or without

12 -- FINDINGS AND RECOMMENDATION

the dangerous offender enhancement) supports the conclusion that had petitioner been properly advised, he would have taken the plea; and (3) given petitioner's desire for mental health care treatment, it is likely that he would have accept the 8.5 plea offer in order to obtain his release as soon as possible and access to mental health treatment at the earliest possible date. Additionally, petitioner contends that trial counsel's attestation that petitioner was resistant to a plea that would involve significant prison time should be rejected given that counsel's memory was admittedly "indistinct," and because it simply reflects petitioner's attitude at a time when he had not been advised of the dangerous offender implication of a GEI defense.

In sum, petitioner posits many plausible arguments which might have led to the entry of a guilty plea in this case. However, petitioner's arguments require this court to ignore the post-conviction court's factual finding that had trial counsel advised petitioner of the risk of a dangerous offender enhancement, petitioner nevertheless would have proceeded to trial, albeit without a GEI defense. The post-conviction court's factual finding is consistent with trial counsel's testimony that petitioner was unwilling to accept a plea bargain in the neighborhood of 8.5 to 10 years, and that absent an offer based on treatment rather than punishment and prison, he wanted a trial. The post-conviction court's factual finding is entitled to a presumption of correctness

13 -- FINDINGS AND RECOMMENDATION

which petitioner has not overcome with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Miller-el v. Cockrell, 537 U.S. 322, 340 (2003); Lambert v. Blodgett, 393 F.3d 943, 977-78 (9th Cir. 2004) (presumption of correctness applies to state court findings of fact made in the course of resolving claims of ineffective assistance of counsel).

Moreover, petitioner's arguments are undermined by the fact that with, or without, a dangerous offender enhancement, petitioner was aware of the fact that he was facing conviction on numerous charges involving multiple victims and, therefore, potentially decades of consecutive prison time. Hence, I am not convinced that knowledge of the possibility of a dangerous offender enhancement would have caused petitioner to accept a plea which he otherwise was inclined to reject. Accordingly, the post-conviction court's conclusion that petitioner did not suffer prejudice is not an unreasonable determination in light of the evidence presented, nor is it contrary to, or an unreasonable application of, clearly established law. 28 U.S.C. § 2254(d)(1) & (2).

## CONCLUSION

Based on the foregoing, petitioner's amended habeas corpus petition (#22) should be denied, and this proceeding, dismissed with prejudice. In the event petitioner seeks appellate review, any request for a certificate of appealability should be denied on

the basis that petitioner has not made a substantial showing of the denial of a constitutional right.

## **SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due August 22, 2011.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due September 8, 2011.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this _4th___ August, 2011.

/s/ Dennis J. Hubel

_____
Dennis J. Hubel
United States Magistrate Judge

15 -- FINDINGS AND RECOMMENDATION